118 N.J. Super. 421 (1972)
288 A.2d 295
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HARRY KOCH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1971.
Decided March 9, 1972.
*423 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Gerald P. Boswell, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Ms. Renee Rivkis, Assistant Deputy Public Defender, of counsel).
Mrs. Joyce E. Munkacsi, Assistant Prosecutor, argued the cause for respondent (Mr. John S. Kuhlthau, Middlesex County Prosecutor, attorney; Mr. Michael R. Perle, Deputy Attorney General, on the brief).
The opinion of the court was delivered by CONFORD, P.J.A.D.
In this appeal from denial of post-conviction relief we find potential merit in only one of the appellant's contentions  that his conviction in May *424 1967 for armed robbery was unconstitutionally flawed by the introduction into evidence by the State on his cross-examination of two prior convictions of defendant in South Carolina, one for highway robbery and the other for escape.[1] He is entitled to a new trial if he had no counsel and did not waive counsel on the occasion of such convictions.[2] (The State also confronted defendant with a third prior conviction  for manslaughter  but defendant has admitted he had counsel in that matter.) We find ourselves constrained to conclude that if defendant was uncounseled in the prior convictions, invalidation of the instant conviction is mandated by the clear implication of United States v. Tucker, 404 U.S. ___, 92 S.Ct. 589, 30 L.Ed.2d 592 (U.S. Sup. Ct., Jan. 11, 1972), coupled with the holding and rationale of Burgett v. Texas, 389 U.S. 109, 114, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), both decided subsequent to defendant's present conviction. We have had and have considered supplemental briefs from the parties in relation to the effect of Tucker.
Defendant was tried and convicted before a jury in May 1967 on an indictment for armed robbery. The principal witness for the State, Mrs. Morris, identified defendant at a pretrial confrontation and in court as one of two men who robbed her in her home. Defendant testified in denial of his complicity in the crime, and gave an alibi, with purported support of two witnesses. On cross-examination, he admitted prior convictions in South Carolina for escape and for highway robbery, the latter in 1949 when he was 17 (as well as the aforesaid manslaughter conviction in 1951). There were defense objections, but not on the ground of lack of counsel at the time of the prior convictions. In accordance with our settled law, the trial judge instructed the jury *425 that the prior convictions could be considered by them to weigh against defendant's credibility. N.J.S. 2A:81-12.
In sentencing defendant to 10 to 13 years imprisonment, the trial judge alluded to defendant's record and said that "crime evidently is a way of life with you" and that defendant was a "hardened criminal."
On direct appeal to this court defendant argued error on the ground, among others, that he was uncounseled at the time of the prior convictions and that the Burgett case, supra (decided November 13, 1967), mandated a reversal. We affirmed the conviction on October 4, 1968. As to the point here under consideration we said (in an unpublished opinion):
2. The contention of error in admission of prior convictions to affect credibility, insofar as based on the recent decision of the United States Supreme Court in Burgett v. Texas, [389 U.S. 109, 88 S.Ct. 258], 19 L.Ed.2d 319 (1967), is not available on the record of this appeal as that record fails to show defendant was not represented on the earlier conviction, or, if unrepresented, that he had failed to waive counsel. We therefore need not inquire whether the reach of the Burgett case extends to use of prior convictions (without counsel) only to affect credibility, or whether the doctrine of that case is retroactive.
Our disposition of this appeal is without prejudice to any post-conviction proceeding the defendant may bring.
Our Supreme Court denied certification February 13, 1969, 53 N.J. 348, and the United States Supreme Court denied certiorari June 9, 1969, 395 U.S. 949, 89 S.Ct. 2030, 23 L.Ed.2d 469.
Thereafter defendant instituted this proceeding for post-conviction relief, the petition containing a sworn verification by him that prior convictions were used against him at his trial in which convictions he was "without assistance of counsel and counsel was not waived."
At the post-conviction hearing counsel for defendant offered to have him testify that he was without counsel at either the highway robbery or escape prosecutions. The State represented to the court that its own investigation of the South Carolina court records failed to reveal any information *426 which would permit it to controvert the defendant's representations as to absence of counsel. Thereupon the court declined the proffer of testimony, saying: "For the record, * * * I assume that defendant was [sic] in court here and will testify that he did not have counsel at either one of those convictions." Therefore, the judge noted later in the proceedings, the "requirement of some evidence [was] moot." After argument the court declined post-conviction relief essentially on the grounds that defendant should have made his objection to the invalidity of the prior convictions at his trial and that in any event Burgett was either not applicable or not retroactive in effect.
The State's interest in the integrity of the instant conviction should have dissuaded the trial court from stipulating the truth of defendant's representations as to absence of counsel without requiring him to testify to that effect, as he offered to do. Moreover, the stipulation did not expressly cover waiver of counsel, which could have been readily settled by having defendant interrogated as to whether he was advised of his right to counsel and that counsel would be provided for him if he was indigent. Despite the fact that the certified copies of the judgments of the escape and highway robbery convictions, apparently used at the trial and presently submitted to us, are silent as to representation; that waiver of counsel is not presumable from a "silent record," Carnley v. Cochran, 369 U.S. 506, 512, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), and that courts "indulge every reasonable presumption against waiver of constitutional rights," id. at 514, 82 S.Ct. at 889; Johnson v. Zerbst, 304 U.S. 458, 464-465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937), we deem the proper course of justice to require a remand for testimony and findings on the questions of presence of counsel and waiver. The remainder of this opinion proceeds on the assumption that absence of counsel and non-waiver thereof will be established on the remand, within the evidentiary principles just alluded to. If not, the conviction will be affirmed.

*427 I. The reach of Burgett to impeachment of credibility.

Burgett took the position that a Texas repetitive-offender type statute could not be activated to enhance punishment where the prior convictions sought to be used for that purpose had been obtained without defendant's representation by counsel, or waiver thereof, in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Even though, after the prior convictions were laid before the jury, the trial court instructed the jury to disregard them and did not permit enhancement of penalty, the Supreme Court reversed, holding the admission of the prior convictions was "inherently prejudicial." 389 U.S., at 115, 88 S.Ct. 258 at 262. The court said that "[t]o permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense * * * is to erode the principle of that case." (Emphasis ours).
In Tucker, supra, the court was confronted with a situation wherein the defendant had been tried in a federal district court in 1953 for armed bank robbery. Three prior convictions were adduced by the Government to impeach defendant's credibility on cross-examination. Moreover, considerable emphasis was placed on the convictions by the sentencing judge in imposing a maximum 25-year sentence. Defendant filed a motion collaterally attacking the conviction 16 years later, claiming he had not been represented by counsel in the criminal proceedings culminating in the convictions used to impeach his credibility  and that the use of such convictions therefore tainted the subject conviction. The district judge agreed with the contention of error (see 404 U.S. at 445, 92 S.Ct. at 591, 30 L.Ed.2d at 595), but found it harmless beyond a reasonable doubt because of the overwhelming evidence of defendant's guilt at the trial of the armed bank robbery case. On appeal the Court of Appeals for the Ninth Circuit agreed with the district court on the point of harmless error (and, by clear implication, *428 on the error in the use of the prior convictions at trial), but remanded for resentencing on the ground of reasonable probability that the consideration at sentencing of the defective prior convictions had led the trial judge to impose a heavier sentence than otherwise he would have. Tucker v. United States, 431 F.2d 1292 (1970).
The United States Supreme Court explicitly agreed with the result and rationale of the Ninth Circuit, and affirmed. To us it is inescapable that the court agreed with the conclusion of both the district court and the court of appeals that the use of the prior convictions to impeach credibility would have invalidated the subject conviction, within the rationale of Burgett, even though asserted in post-conviction proceedings 16 years later, had it not been for the neutralizing factor of harmless error beyond a reasonable doubt.
The courts of California anticipated Burgett in relation to use of uncounseled prior convictions to enhance punishment under an habitual offender statute, in In re Woods, 64 Cal.2d 3, 48 Cal. Rptr. 689, 409 P.2d 913 (Sup. Ct. 1966); and, in relation to impeachment of a defendant's credibility, they anticipated the implication of Tucker, supra, in People v. Coffey, 67 Cal.2d 204, 60 Cal. Rptr. 457, 430 P.2d 15 (Sup. Ct. 1967); and see In re Dabney, 71 Cal.2d 1, 76 Cal. Rptr. 636, 452 P.2d 924 (Sup. Ct. 1969). It has also been assumed by other courts, prior to Tucker, that the rationale of Burgett extends to impeachment situations. Johnson v. State, 9 Md. App. 166, 263 A.2d 232 (Ct. Sp. App. 1970); Subilosky v. Commonwealth, 265 N.E.2d 80 (Mass. Sup. Jud. Ct. 1970); Gilday v. Scafati, 428 F.2d 1027 (1 Cir.1970); cf. Tucker v. Craven, 421 F.2d 139 (9 Cir.1970).
We are of the view, which the clear implication of the opinion of the Supreme Court in Tucker fortifies, that the use of defendant's uncounseled prior convictions to attack his credibility at the instant trial impaired his rights under the Sixth and Fourteenth Amendments. Undoubtedly, the *429 prior convictions were used "to support guilt," within the formulation of Burgett, since their potential disparagement of defendant's credibility as a witness went to the issue of his guilt or innocence of the crime charged against him.

II. Retroactivity of Burgett
This question has two facets, which are somewhat interrelated. The first is whether defendant could invoke Burgett in the present post-conviction proceedings, within the intent of R. 3:22 regulating post-conviction relief. The second is whether general principles of retroactivity of newly adjudicated federal constitutional rights are compatible with the allowance of the instant attack. As noted, the second question was expressly left open in our affirmance of the conviction on direct appeal.
R. 3:22-3 provides that post-conviction relief is not a substitute for direct appeal. Defendant did not offend this rule, for he tried to raise the Burgett point on appeal. R. 3:22-4 provides that "any ground for relief not raised * * * in the proceedings resulting in the conviction * * * is barred from assertion in a proceeding under this rule unless * * * the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or * * * denial of relief would be contrary to the Constitution of the United States or the State of New Jersey."
The ruling of the post-conviction court that defendant should have proven his lack of representation in the prior convictions at the time of trial of the instant case is manifestly unsound since Burgett had not then been decided nor had an equivalent determination been made by any New Jersey court. He did raise the point at his first subsequent judicial opportunity  the direct appeal.
The State now urges that the Burgett principle had been enunciated, prior to the instant trial, in Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526 (1966), so that defendant should have known of the incompetence of the prior convictions at the trial herein. We disagree. Greer is *430 a short, uninformative per curiam, obviously intelligible only to the court itself and the parties in the case. Defendant cannot be faulted for not having invoked it at his trial. We conclude that nothing in R. 3:22 precludes the instant post-conviction attack.
We further conclude that the rule of retroactivity here appropriate is that applied in this kind of situation by the California Supreme Court in In re Dabney, supra (71 Cal.2d 1, 76 Cal. Rptr. 636, 452 P.2d 924). That court selected its previous decision in In re Woods, supra, as sufficiently adumbrating the constitutional inefficacy in later criminal proceedings of uncounseled prior convictions, so as to warrant limiting the availability of the rule to subject criminal convictions not yet final[3] at the date of the decision in Woods. (76 Cal. Rptr. 636, 452 P.2d 924). This is the same rule of retroactivity as the Supreme Court has applied in relation to illegal searches, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and to improper comments by a prosecutor upon a defendant's failure to testify, Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). Compare the more restrictive rules of retroactivity applied in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (requirement of counsel at a lineup identification), and in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (as to the Miranda and Escobedo rules).
From the procedural history of Tucker, supra, and the opinions of the court of appeals and the Supreme Court in that case, it is possible to argue full retroactivity in relation both to use of prior convictions to impeach and to affect sentencing discretion.[4] Apparently also holding for full retroactivity *431 is Gilday v. Scafati, supra. The involvement of Gideon v. Wainwright, supra, which is fully retroactive, in the genesis of Burgett, also argues for full retroactivity. At least that factor, added to the consideration that use of the invalid prior convictions plainly implicates the "integrity of the fact-finding process," see Linkletter v. Walker, supra, 381 U.S. at 639, 85 S.Ct. at 1743, and Johnson v. New Jersey, supra, 384 U.S. at 728, 86 S.Ct. 1772, 1778 and "the clear danger of convicting the innocent," ibid, strongly bespeaks the choice here of no more restrictive rule of retroactivity than that applied in Linkletter and Tehan, both supra.
We are fully persuaded of the justice of applying here the stated intermediate rule of retroactivity by the discussion by the Supreme Court of California in Dabney, supra, of the three criteria reiterated in Stovall, supra, 388 U.S. at 297, 87 S.Ct. at 1970, "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."
In choosing the intermediate standard the California court said:

(a) Purpose of the Woods-Coffey Rule[5]
One purpose of the Woods-Coffey rule is to prevent erosion of Gideon itself by protecting the accused from suffering anew from the initial deprivation of his Sixth Amendment right. (Burgett v. Texas, supra, 389 U.S. 109, 115, 116, 88 S.Ct. 258, 19 L.Ed.2d 319.) But the exclusion of invalid priors is also aimed at protecting the fairness of the second trial. The requirement of counsel established by Gideon v. Wainwright, supra, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, receives full retroactive effect because `[t]he basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial * * * is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent.' (Tehan v. United States ex rel. Shott (1966) 382 U.S. 406, 416, 86 S.Ct. 459, *432 465, 15 L.Ed.2d 453). To the extent that such an infected prior conviction contributes to a later conviction, the danger threatens that the second proceeding as well as the first, on which it relied, will produce the conviction of an innocent man. Our inquiry does not stop here, however; we must also weigh the application to the present proceeding of the two other factors mentioned in Stovall.

(b) Reliance on Pre-Woods Standards

A limited retroactivity approach in the instant case is supported by those other Stovall considerations. Before Woods, prosecutors, in order to impeach defendants testifying on their own behalf, often introduced at trial prior convictions, some of which were invalid under Gideon. In reliance on our position before Woods, prosecutors, as well as defendants and courts, did not attempt to ascertain the constitutional validity of those priors. (Compare Tehan v. United States ex rel. Shott, supra, 382 U.S. 406, 410-413, 86 S.Ct. 459; Johnson v. New Jersey (1966) 384 U.S. 719, 731, 86 S.Ct. 1772, 16 L.Ed.2d 882.) Unlimited retroactivity here would compel the courts to hold hearings as to the validity of priors in many cases not covered by the Woods retroactivity with regard to priors used for sentencing purposes. (Compare Linkletter v. Walker, supra, 381 U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601.)

(c) Administration of Justice

Most significantly, unlimited retroactivity in the instant case would impose grave burdens on the administration of criminal justice. It would result in `the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from unlimited retroactivity; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial. To require a general release of prisoners of undoubted guilt would be to cripple the orderly administration of the criminal laws." (In re Lopez (1965) 62 Cal.2d 368, 381, 42 Cal. Rptr. 188, 198, 398 P.2d 380, 390; see Johnson v. New Jersey, supra, 384 U.S. 719, 731, 86 S.Ct. 1772, 16 L.Ed.2d 882; Tehan v. United States ex rel. Shott, supra, 382 U.S. 406, 419, 86 S.Ct. 459, 15 L.Ed.2d 453.) Although most California prior convictions probably would remain valid, since this state has long required counsel in felony prosecutions, a very significant fraction of the prior convictions introduced in California prosecutions were obtained in other jurisdictions which did not so anticipate Gideon.
Accordingly, we restrict retroactivity to those cases which became final after our decision in Woods. Such limited retroactivity will involve only a small number of cases; in those cases which must be retried the evidence will still be fresh. (Compare Tehan v. United States ex rel. Shott, supra, 382 U.S. 406, 409 fn. 3, 86 S.Ct. 459; Linkletter v. Walker, supra, 381 U.S. 618, 639, 85 S.Ct. 1731; In re Gaines (1965) 63 Cal.2d 234, 45 Cal. Rptr. 865, 404 P.2d 473; In re Lopez, supra, 62 Cal.2d 368, 42 Cal. Rptr. 188, 398 P.2d *433 380.) Although in Stovall v. Denno, supra, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and Johnson v. New Jersey, supra, 384 U.S. 719, 86 S.Ct. 1772, the Supreme Court applied a more restrictive form of retroactivity, those cases may be distinguished from the instant issue. They dealt, not with the establishment of a new guarantee or with a new limitation on the impact of a prior constitutional violation, but with prophylactic rules to protect suspects from possible violations of already recognized rights. [76 Cal. Rptr. at 640, 452 P.2d at 928-929]
We approve and adopt the foregoing rationale as essentially our own, although recognizing that no fully consistent reconciliation of the opinions of the United States Supreme Court on retroactivity of new constitutional doctrine is possible. We therefore hold that the Burgett-Tucker rule is available to any defendant whose conviction was not final (time for all direct review not having expired) on November 13, 1967, the date of the Burgett decision.[6]
Koch's conviction not having become final on direct review until after the enunciation of Burgett, he is entitled to its benefit in this post-conviction proceeding.

III. Harmless Error Beyond a Reasonable Doubt

It remains to be considered whether use of the offensive prior convictions can be overlooked as harmless error beyond a reasonable doubt, as did the several courts in the Tucker case in relation to the illegal use of the prior convictions to impair defendant's credibility at trial. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The State argues for the affirmative of that proposition, adding that defendant's credibility was already somewhat impeached, and unexceptionably, by the prior conviction for manslaughter.
As to the latter observation, we cannot feel beyond a reasonable doubt that the potential impact on defendant's credibility of three prior convictions was not substantially greater *434 than of one of them alone, especially when one of the invalid ones was for highway robbery and the instant charge was armed robbery.
Nor can we conclude that the evidence against defendant here, aside from the prior convictions, was so overwhelming against him that it is beyond any reasonable doubt that the invalid convictions played no part in the verdict of guilt. The issue at trial was basically a contest of credibility between the victim of the robbery, who identified him as one of the culprits, and defendant himself, who testified he was elsewhere. We cannot be at all sure that the invalid prior convictions, particularly the one for highway robbery, did not play a substantial part in the jury's deliberations. We must therefore reject the argument of harmless error.

IV
In his supplemental brief filed after rendition of the Supreme Court decision in Tucker, defendant takes advantage of the direct holding there  that the taking into consideration by the sentencing judge of Tucker's prior uncounseled convictions in exercising his discretion as to the quantum of sentence, was unconstitutional  by attacking the sentence here, for the first time, on the same ground. We need not pass upon the availability of that contention now, since, if the prior convictions are found on remand to have been uncounseled (and without wavier), the sentence will be vacated along with the conviction. In such event, and a new conviction of defendant upon retrial, it will of course be improper under Tucker for the sentencing court to give any consideration to the uncounseled convictions in fixing sentence.
Reversed and remanded for futher proceedings in accordance with this opinion. The remand should be executed and the findings and record thereof returned to this court within 45 days of the filing of this opinion. We retain jurisdiction to enter final judgment in the appeal.
NOTES
[1] The other contention, as to improper identification procedures, is without merit.
[2] As explained hereinafter, there must be a remand to establish the facts of nonrepresentation and absence of waiver.
[3] "Final," meaning upon expiration of time to file direct review proceedings. 76 Cal. Rptr. at 642, 452 P.2d at 930.
[4] Full retroactivity is applied when the invalid prior conviction is used to enhance punishment under an habitual offender statute. Oswald v. Crouse, 420 F.2d 373 (10 Cir.1969); Losieau v. Sigler, 406 F.2d 795 (8 Cir.1969); Williams v. Coiner, 392 F.2d 210 (4 Cir.1968).
[5] Where the Dabney opinion refers to "Woods" or "Woods-Coffey," the reader should transpose, for our purposes, "Burgett."
[6] However, defendants tried subsequent to November 13, 1967 presumably would be barred, under R. 3:22-4, from later raising Burgett-Tucker if no objection was made at trial on that ground.